Tyler J. Woods (State Bar No. 232464)
 twoods@trialnewport.com
Richard H. Hikida (State Bar No. 196149)
 rhikida@trialnewport.com
Scott J. Ferrell (State Bar No. 202091)
 sferrell@trialnewport.com
**NEWPORT TRIAL GROUP**
A Professional Corporation
4100 Newport Place, Suite 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERMOLIFE INTERNATIONAL, LLC, and THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY,<br><br>Plaintiffs,<br><br>vs.<br><br>DYMATIZE ENTERPRISES, LLC,<br><br>Defendants | Case No. 13-cv-888 JLS (MDD)<br><br>**AMENDED COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs ThermoLlife International, LLC and The Board of Trustees of the Leland Stanford Junior University ("Plaintiffs") hereby allege for their Complaint against Dymatize Enterprises, LLC ("Defendant"), on personal knowledge as to their own activities and on information and belief as to the activities of others, as follows:

## I. THE PARTIES

1. Plaintiff ThermoLife International, LLC ("ThermoLife") is a limited liability company organized and existing under the laws of Arizona, with a place of business at 1811 Ocean Front Walk in Venice, California, 90291.

2. Plaintiff The Board of Trustees of the Leland Stanford Junior University ("Stanford University") is an institution of higher education having powers under the laws of the State of California, with a place of business at 1705 El Camino Real in Palo Alto, California, 94306-1106.

3. ThermoLife is and was at all relevant times the exclusive licensee of the following United States Patents:

   a. Patent No. 6,117,872, titled "Enhancement of Exercise Performance by Augmenting Endogenous Nitric Oxide Production or Activity";

   b. Patent No. 5,891,459, titled "Enhancement of Vascular Function By Modulation of Endogenous Nitric Oxide Production or Activity"; and

   c. Patent No. 7,452,916, titled "Enhancement of Vascular Function By Modulation of Endogenous Nitric Oxide Production or Activity."

4. The above patents are and were owned by Stanford University and ThermoLife exclusively licenses and licensed the patents from Stanford University. ThermoLife is pursuing this action and ThermoLife has the right to join Stanford as a necessary party.

5. The above patents are referred to herein as the "patents in suit."

6. ThermoLife has been given the right by Stanford University to institute suit with respect to past, current, and future infringement of the patents in suit, including this suit against Defendant.

7. Defendant is a corporation organized and existing under the laws of Texas with a principal place of business at 13737 N. Stemmons Fwy. In Farmers Branch, Texas, 75234.

8. Defendant does business as Dymatize Nutrition.

## II. JURISDICTION AND VENUE

9. This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

10. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400.

11. This Court has personal jurisdiction over Defendant. By way of example and without limitation, Defendant, directly or through intermediaries (including distributors, retailers, and others), makes, manufactures, ships, distributes, advertises, markets, offers for sale, and/or sells dietary supplement products that infringe on one or more claims of the patents in suit (hereinafter the "accused products"), which include without limitation products sold under the "Xpand Xtreme Pump" brand name, in the United States, the State of California, and the Southern District of California.

12. By way of further example and without limitation, Defendant has purposefully and voluntarily placed the accused products into the stream of commerce with the expectation that they will be purchased in the Southern District of California, and the products are actually purchased in the Southern District of California.

## III. THE DEFENDANT'S INFRINGEMENTS

13. Defendant has committed the tort of patent infringement within the State of California, and more particularly, within the Southern District of California, by virtue of the fact that Defendant has formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and/or sold the accused products in this District, and continues to do so.

///

## A.   DIRECT INFRINGEMENTS

14.   Defendant's employees, agents, representatives and other persons sponsored by or who endorse Defendant and Defendant's products in advertising and marketing activities, have taken, used, and orally administered the accused products.

15.   The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendant to include certain ingredients that, by virtue of their inclusion in the products, infringe one or more claims of one or more of the patents in suit.

16.   The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendant to include specific ingredients for certain purposes that, by virtue of their inclusion in the products for such purposes, infringe one or more claims of one or more of the patents in suit, and as a result, when Defendant's employees, agents, representatives and other persons sponsored by or who endorse Defendant and Defendant's products in advertising and marketing activities orally administer the accused products, they are practicing and they practiced the methods disclosed in those claims.

17.   These infringing ingredients, and/or combinations thereof, include, without limitation, Arginine AKG, Arginine HCL, Arginine Ketoisocaproate, and Taurine, as set forth on Defendant's labels for the accused products.

18.   The purposes for which these ingredients are included in the accused products are and were, without limitation, to enhance nitric oxide production, to improve nitric oxide activity, to produce nitric oxide, to boost nitric oxide levels in the body, and to enhance physical performance.

19.   Defendant encouraged and/or is aware of the fact that its employees, agents, representatives and other persons sponsored by Defendant or who endorse Defendant and Defendant's products in advertising and marketing activities orally administered and administer the accused products and practice and practiced the methods disclosed in one or more claim of one or more of the patents in suit, and these

employees, agents, representatives and other persons sponsored by Defendant or who endorse Defendant and Defendant's products in advertising and marketing activities are and were acting under Defendant's direction and control when practicing those methods.

20. Therefore, Defendant is and was a direct infringer of one or more claims of one or more of the patents in suit, and Defendant practices and practiced the methods as set forth in one or more claims of one or more of the patents in suit.

## B. INDIRECT INFRINGEMENTS

21. End-users of Defendant's accused products were and are also direct infringers of one or more claims of one or more of the patents in suit.

22. End-users of Defendant's accused products have taken, used, and orally administered the accused products.

23. The accused products are and were formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and/or sold by Defendant to include certain ingredients that, by virtue of their inclusion in the products, infringe and infringed one or more claims of one or more of the patents in suit.

24. The accused products are and were formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and/or sold by Defendant to include specific ingredients for certain purposes that, because of their inclusion in the products for such purposes, infringe and infringed one or more claims of one or more of the patents in suit, and as a result, when end-users of Defendant's accused products orally administer and administered the accused products, they are and were practicing the methods disclosed in those claims.

25. Defendant's labels and advertising for the accused products explain and explained the elements and essential elements of one or more of the methods disclosed in the patents in suit, and those labels and advertising statements encourage, urge, and induce the accused products' end-users, and did so in the past, to purchase and orally

ingest the products to practice those methods, and end-users do and did practice those methods.

26. Defendant has therefore specifically intended to cause these end-users to directly infringe the claimed methods of these patents, and in fact urged them to do so.

27. The accused products are and were not suitable for non-infringing uses, and none of Defendant's labels or advertisements for the accused products disclose or disclosed any uses for the products, nor for the compounds disclosed in the claimed methods of the patents in suit, that do not infringe upon such methods.

28. The inclusion of the specific infringing compounds in the products is and was material to practicing such methods.

29. Defendant has and had knowledge that the accused products are and were especially adapted by end-users of the products for the practicing of such methods, and, indeed, Defendant encourages, urges, and induces the accused products' end-users to purchase and orally administer the accused products to practice such methods, and has done so in the past.

30. Defendant intentionally and knowingly induced, encouraged, and urged end-users of the accused products to purchase and orally administer the accused products for the purposes of practicing the claimed methods, by having them orally ingest the compounds disclosed in such claims.

31. Defendant has and had knowledge of the fact that the accused products, particularly as administered, infringe on one or more claims of the patents in suit.

32. Defendant has and had direct, firsthand knowledge of the patents in suit.

33. For example and without limitation, Plaintiffs believe Defendant has had knowledge of the patents in suit since November 2006, when an ongoing settlement of a patent infringement case relating to at least some of the patents in suit against Herbalife, a well-known company in Defendant's industry, was announced in press releases issued in a highly publicized manner. Plaintiffs believe Defendant's

**AMENDED COMPLAINT FOR PATENT INFRINGEMENT** 13-cv-888 JLS (MDD)

employees, agents, and representatives saw the press releases and were aware of the settlement and thus the patents in suit.

34. By way of further example and without limitation, Defendant sold its products through retailers, including online retailers, and those retailers have sold other companies' products whose labels and/or advertisements have been prominently marked with one or more of the patents in suit, by patent number, including without limitation, upon information and belief, the products manufactured and sold by Herbalife, Daily Wellness, and Vitality Research Labs. Defendant's employees, agents, and representatives have seen these labels and advertisements and, thus, Defendant has and had direct knowledge of the patents in suit.

35. Defendant brazenly and willfully decided to infringe the patents in suit despite knowledge of the patents' existence and its knowledge of the accused products' infringements of the patents.

36. At a minimum, and in the alternative, Plaintiffs plead that Defendant willfully blinded itself to the infringing nature of the accused products' sales.

37. Defendant did not cease its own direct infringement, nor its contributory infringement or inducement of infringement by end-users, despite its knowledge of the patents in suit and the end-users' infringing activities with respect to the patents in suit.

38. Plaintiffs also believe Defendant is infringing on one or more claims of United States Patent No. 5,428,070 and Patent No. 5,945,452, patents which Defendant has had prior knowledge of and are also licensed exclusively to by Stanford University, to include the right to sue for infringement, and Plaintiffs will seek to amend this Complaint once facts confirming that belief are ascertained.

## IV.   FIRST CAUSE OF ACTION
## Infringement of U.S. Patent No. 5,891,459

39. Plaintiffs repeat and re-allege the allegations of the foregoing paragraphs of this Complaint as if fully set forth herein.

40. Defendant has in the past literally and directly infringed or directly infringed under the doctrine of equivalents one or more claims of United States Patent No. 5,891,459 by making, using, selling, and offering for sale the accused products, or any one of those products.

41. In addition to the fact that Defendant makes, uses, sells, and offers for sale the accused products, and did so in the past, further examples of Defendant's direct infringements include, without limitation, the fact that Defendant encouraged and/or is aware of the fact that its employees, agents, representatives and other persons sponsored by or who endorse Defendant and Defendant's products in advertising and marketing activities orally administer the accused products and practice the methods disclosed in one or more claims of United States Patent No. 5,891,459, and these employees, agents, representatives and other persons sponsored by or who endorse Defendant and Defendant's products in advertising and marketing activities acted under Defendant's direction and control when practicing those methods.

42. Defendant encouraged and was aware of these persons' oral administration of the accused products for these purposes, these persons are acting under Defendant's direction and control, and therefore Defendant directly practiced the methods disclosed in United States Patent No. 5,891,459.

43. End-users of Defendant's accused products were also direct infringers of one or more claims of United States Patent No. 5,891,459.

44. End-users of Defendant's accused products have taken, used, and orally administered the accused products.

45. The accused products were formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendant to include certain ingredients that, by virtue of their inclusion in the products, infringed one or more claims of United States Patent No. 5,891,459.

46. The accused products were formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendant to include specific

**AMENDED COMPLAINT FOR PATENT INFRINGEMENT** 13-cv-888 JLS (MDD)

ingredients for purposes that, by their inclusion in the products for such purposes, infringed one or more claims of United States Patent No. 5,891,459, and as a result, when end-users of Defendant's accused products orally administered the accused products, they were practicing the methods disclosed in one or more claims of that patent.

47. Defendant's labels and advertising for the accused products explained the elements and essential elements of the methods disclosed in United States Patent No. 5,891,459, and those labels and advertising statements encouraged, urged, and induced the accused products' end-users to purchase and orally ingest the products to practice those methods, and end-users did practice those methods.

48. Defendant therefore specifically intended to cause these end-users to directly infringe the claimed methods of United States Patent No. 5,891,459, and had in fact urged them to do so.

49. The accused products were not suitable for non-infringing uses, and none of Defendant's labels or advertisements for the accused products disclosed any uses for the products, nor for the compounds disclosed in the claimed methods, that did not infringe upon such methods.

50. The inclusion of these specific infringing compounds in the products was material to practicing such methods.

51. Defendant had knowledge that the accused products were especially adapted by end-users of the products for the practicing of such methods, and, indeed, Defendant encouraged, urged, and induced the accused products' end-users to purchase and orally administer the accused products to practice such methods.

52. Defendant intentionally and knowingly induced, encouraged, and urged end-users of the accused products to purchase and orally administer the accused products for the purposes disclosed in one or more claims of United States Patent No. 5,891,459, by having them orally ingest the compounds disclosed in such claims.

///

53. Defendant had knowledge of the fact that the accused products, particularly as administered, infringed on one or more claims of United States Patent No. 5,891,459.

54. Defendant also had direct, firsthand knowledge of United States Patent No. 5,891,459 itself.

55. Defendant's activities were without express or implied license by Plaintiffs.

56. As a result of Defendant's acts of infringement, Plaintiffs have suffered and will continue to suffer damages in an amount to be proved at trial.

57. As a result of Defendant's acts of infringement, Plaintiffs have been and will continue to be irreparably harmed by Defendant's infringements, which will continue unless Defendant is enjoined by this Court.

58. Defendant's past infringements and/or continuing infringements have been deliberate and willful, and this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees in accordance with 35 U.S.C. § 285.

## V.     SECOND CAUSE OF ACTION
### Infringement of U.S. Patent No. 7,452,916

59. Plaintiffs repeat and re-allege the allegations of the foregoing paragraphs of this Complaint as if fully set forth herein.

60. Defendant has in the past literally and directly infringed or directly infringed under the doctrine of equivalents one or more claims of United States Patent No. 7,452,916 by making, using, selling, and offering for sale the accused products, or any one of those products.

61. In addition to the fact that Defendant makes, uses, sells, and offers for sale the accused products, and did so in the past, further examples of Defendant's direct infringements include, without limitation, the fact that Defendant encouraged and/or is aware of the fact that its employees, agents, representatives and other persons

sponsored by or who endorse Defendant and Defendant's products in advertising and marketing activities orally administer the accused products and practice the methods disclosed in one or more claims of United States Patent No. 7,452,916, and these employees, agents, representatives and other persons sponsored by or who endorse Defendant and Defendant's products in advertising and marketing activities acted under Defendant's direction and control when practicing those methods.

62. Defendant encouraged and was aware of these persons' oral administration of the accused products for these purposes, these persons are acting under Defendant's direction and control, and therefore Defendant directly practiced the methods disclosed in United States Patent No. 7,452,916.

63. End-users of Defendant's accused products were also direct infringers of one or more claims of United States Patent No. 7,452,916.

64. End-users of Defendant's accused products have taken, used, and orally administered the accused products.

65. The accused products were formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendant to include certain ingredients that, by virtue of their inclusion in the products, infringed one or more claims of United States Patent No. 7,452,916.

66. The accused products were formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendant to include specific ingredients for purposes that, by their inclusion in the products for such purposes, infringed one or more claims of United States Patent No. 7,452,916, and as a result, when end-users of Defendant's accused products orally administered the accused products, they were practicing the methods disclosed in one or more claims of that patent.

67. Defendant's labels and advertising for the accused products explained the elements and essential elements of the methods disclosed in United States Patent No. 7,452,916, and those labels and advertising statements encouraged, urged, and induced

**AMENDED COMPLAINT FOR PATENT INFRINGEMENT** 13-cv-888 JLS (MDD)

the accused products' end-users to purchase and orally ingest the products to practice those methods, and end-users did practice those methods.

68. Defendant therefore specifically intended to cause these end-users to directly infringe the claimed methods of United States Patent No. 7,452,916, and had in fact urged them to do so.

69. The accused products were not suitable for non-infringing uses, and none of Defendant's labels or advertisements for the accused products disclosed any uses for the products, nor for the compounds disclosed in the claimed methods, that did not infringe upon such methods.

70. The inclusion of these specific infringing compounds in the products was material to practicing such methods.

71. Defendant had knowledge that the accused products were especially adapted by end-users of the products for the practicing of such methods, and, indeed, Defendant encouraged, urged, and induced the accused products' end-users to purchase and orally administer the accused products to practice such methods.

72. Defendant intentionally and knowingly induced, encouraged, and urged end-users of the accused products to purchase and orally administer the accused products for the purposes disclosed in one or more claims of United States Patent No. 7,452,916, by having them orally ingest the compounds disclosed in such claims.

73. Defendant had knowledge of the fact that the accused products, particularly as administered, infringed on one or more claims of United States Patent No. 7,452,916.

74. Defendant also had direct, firsthand knowledge of United States Patent No. 7,452,916 itself.

75. Defendant's activities were without express or implied license by Plaintiffs.

76. As a result of Defendant's acts of infringement, Plaintiffs have suffered and will continue to suffer damages in an amount to be proved at trial.

77. As a result of Defendant's acts of infringement, Plaintiffs have been and will continue to be irreparably harmed by Defendant's infringements, which will continue unless Defendant is enjoined by this Court.

78. Defendant's past infringements and/or continuing infringements have been deliberate and willful, and this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees in accordance with 35 U.S.C. § 285.

## VI. THIRD CAUSE OF ACTION

### Infringement of U.S. Patent No. 6,117,872

79. Plaintiffs repeat and re-allege the allegations of the foregoing paragraphs of this Complaint as if fully set forth herein.

80. Defendant has in the past and still is literally and directly infringing or directly infringing under the doctrine of equivalents one or more claims of United States Patent No. 6,117,872 by making, using, selling, and offering for sale the accused products, or any one of those products, and will continue to do so unless enjoined by this Court.

81. In addition to the fact that Defendant makes, uses, sells, and offers for sale the accused products, further examples of Defendant's direct infringements include, without limitation, the fact that Defendant has encouraged and/or is aware of the fact that its employees, agents, representatives and other persons sponsored by or who endorse Defendant and Defendant's products in advertising and marketing activities orally administer the accused products and practice the methods disclosed in one or more claims of United States Patent No. 6,117,872, and these employees, agents, representatives and other persons sponsored by or who endorse Defendant and Defendant's products in advertising and marketing activities are acting under Defendant's direction and control when practicing those methods.

82. Defendant has encouraged and is aware of these persons' oral administration of the accused products for these purposes, these persons are acting

under Defendant's direction and control, and therefore Defendant is directly practicing the methods disclosed in United States Patent No. 6,117,872.

83. End-users of Defendant's accused products are also direct infringers of one or more claims of United States Patent No. 6,117,872.

84. End-users of Defendant's accused products have taken, used, and orally administered the accused products.

85. The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendant to include certain ingredients that, by virtue of their inclusion in the products, infringe one or more claims of United States Patent No. 6,117,872.

86. The accused products is formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendant to include specific ingredients for purposes that, by their inclusion in the products for such purposes, infringe one or more claims of United States Patent No. 6,117,872, and as a result, when end-users of Defendant's accused products orally administer the accused products, they are practicing the methods disclosed in one or more claims of that patent.

87. Defendant's labels and advertising for the accused products explain the elements and essential elements of the methods disclosed in United States Patent No. 6,117,872, and those labels and advertising statements encourage, urge, and induce the accused products' end-users to purchase and orally ingest the products to practice those methods, and end-users do practice those methods.

88. Defendant has therefore specifically intended to cause these end-users to directly infringe the claimed methods of United States Patent No. 6,117,872, and has in fact urged them to do so.

89. The accused products are not suitable for non-infringing uses, and none of Defendant's labels or advertisements for the accused products disclose any uses for

the products, nor for the compounds disclosed in the claimed methods, that do not infringe upon such methods.

90. The inclusion of these specific infringing compounds in the products is material to practicing such methods.

91. Defendant has knowledge that the accused products are especially adapted by end-users of the products for the practicing of such methods, and, indeed, Defendant encourages, urges, and induces the accused products' end-users to purchase and orally administer the accused products to practice such methods, and have done so in the past.

92. Defendant has intentionally and knowingly induced, encouraged, and urged end-users of the accused products to purchase and orally administer the accused products for the purposes disclosed in one or more claims of United States Patent No. 6,117,872, by having them orally ingest the compounds disclosed in such claims.

93. Defendant has knowledge of the fact that the accused products, particularly as administered, infringe on one or more claims of United States Patent No. 6,117,872.

94. Defendant also has direct, firsthand knowledge of United States Patent No. 6,117,872.

95. Defendant's activities have been without express or implied license by Plaintiff.

96. As a result of Defendant's acts of infringement, Plaintiffs have suffered and will continue to suffer damages in an amount to be proved at trial.

97. As a result of Defendant's acts of infringement, Plaintiffs have been and will continue to be irreparably harmed by Defendant's infringements, which will continue unless Defendant is enjoined by this Court.

98. Defendant's past infringements and/or continuing infringements have been deliberate and willful, and this case is therefore an exceptional case, which

warrants an award of treble damages and attorneys' fees in accordance with 35 U.S.C. § 285.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for entry of judgment against Defendant as follows:

1. A declaration that Defendant has infringed the patents in suit, under 35 U.S.C. §§ 271 *et seq.*;

2. That injunctions, preliminary and permanent, be issued by this Court restraining Defendant, its officers, agents, servants, directors, and employees, and all persons in active concert or participation with each, from directly or indirectly infringing, or inducing or contributing to the infringement by others of, United States Patent No. 6,117,872;

3. That Defendant be required to provide to Plaintiffs an accounting of all gains, profits, and advantages derived by Defendant's infringement of the patents in suit, and that Plaintiffs be awarded damages adequate to compensate Plaintiffs for the wrongful infringing acts by Defendant, in accordance with 35 U.S.C. § 284;

4. That the damages awarded to Plaintiffs with regard to the patents in suit be increased up to three times, in view of Defendant's willful infringement, in accordance with 35 U.S.C. § 284;

5. That this case be declared to be exceptional in favor of Plaintiffs under 35 U.S.C. § 285, and that Plaintiffs be awarded their reasonable attorneys' fees and other expenses incurred in connection with this action;

6. That Plaintiffs be awarded their interest and costs of suit incurred in this action;

7. Compensatory damages;

8. Punitive damages; and

/ / /

/ / /

- 15 -
**AMENDED COMPLAINT FOR PATENT INFRINGEMENT**                          **13-cv-888 JLS (MDD)**

1      9.    That Plaintiffs be awarded such other and further relief as this Court may deem just and proper.

                              Respectfully submitted,
                              NEWPORT TRIAL GROUP
                              A Professional Corporation

Dated:  February 13, 2014          /s/*Tyler J Woods*
                              By:    Tyler J. Woods
                                      Attorneys for Plaintiffs

**AMENDED COMPLAINT FOR PATENT INFRINGEMENT**        **13-cv-888 JLS (MDD)**

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a jury trial for all issues in this case that properly are subject to a jury trial.

                Respectfully submitted,

                NEWPORT TRIAL GROUP
                A Professional Corporation

Dated: February 13, 2014      /s/*Tyler J Woods*
                By:   Tyler J. Woods
                      Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2014, I electronically filed the foregoing **THERMOLIFE INTERNATIONAL, LLC GROUP, LLC'S AMENDED COMPLAINT FOR PATENT INFRINGEMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

      /s/*Tyler J Woods*
      Tyler J Woods